UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

VICTOR L. SIMS,                                                                                    PETITIONER

V.                                                                CIVIL ACTION NO. 2:18-CV-94-KS-RPM

WARDEN MORRIS,                                                                                RESPONDENT

### REPORT AND RECOMMENDATION

#### I.      INTRODUCTION

On May 31, 2018, petitioner Victor L. Sims ("Sims") filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 ("Section 2254"), seeking for his state court conviction to be set aside, his sentence vacated, and a new trial. Doc. [1]. Sims contends that he is unlawfully confined because his conviction and sentence were imposed in violation of the U.S. Constitution and laws of the United States. *Id.*, at 1.

#### II.     FACTS

On March 16, 2014, Joyce McCoy ("McCoy") hosted a "card party" at her Laurel, MS house, which several guests attended, including: Dorothy Jackson ("Dorothy"), Victoria Dean ("Vickie"), Evelyn Thomas ("Evelyn"), Tawaya "Kimberly" Ransom ("Kimberly"), and Octavia Jackson ("Octavia"). Doc. [14], Ex. 3 (McCoy T. 134–37); Ex. 4 (Dorothy T. 156–57). Around 6:00 PM that day, petitioner Sims dropped off his girlfriend, Shalonda Simmons ("Simmons"), at McCoy's house. *Id.*, Ex. 4 (Sims T. 232). Dressed in a brown shirt and black pants, Sims returned to pick up Simmons later that night. *Id.*, Ex. 4 (Evelyn T. 176); (Sims T. 232–33). After Vickie complimented Sims' outfit, *id.*, Ex. 4 (Vickie T. 193), Kimberly told him that Simmons already left McCoy's house, *id.*, Ex. 4 (Kimberly T. 226); (Sims T. 233). Before leaving, Sims "joked around" with

Octavia that he was going to steal her "chump change." *See, e.g., id.*, Ex. 4 (Vickie T. 192); (Sims T. 239). He left shortly thereafter without incident. *Id.*, Ex. 4 (Dorothy T. 157).

Later that night, between 11:30 PM and 1:00 AM, five women were still playing cards in McCoy's kitchen: Dorothy, Evelyn, Vickie, Keisha Jackson ("Keisha"), and Kimberly. Doc. [14], Ex. 3 (Morris T. 108); Ex. 4 (Dorothy T. 156); (Evelyn T. 174, 180); (Vickie T. 192).[1] McCoy had withdrawn from the game to clean her house and put her three young children to bed. *Id.*, Ex. 3 (McCoy T. 138, 143); Ex. 4 (Evelyn T. 178:1–6). Suddenly, two men, with black stockings over their faces and guns drawn, entered the house and demanded that McCoy and her guests hand over their money. *Id.*, Ex. 3 (McCoy T. 140–42); Ex. 4 (Dorothy T. 157); (Evelyn T. 177). One of the men was dressed in the same brown shirt and black pants that Sims was wearing at McCoy's house earlier that evening. *Id.*, Ex. 4 (Dorothy T. 157); (Evelyn T. 174).

When the men entered the house, several of the guests immediately identified the man dressed in brown and black as Sims. First, Evelyn, who testified to knowing Sims for at least fifteen years, identified Sims by his voice, face, and clothing; she had "no doubt" that the man was Sims. Doc. [14], Ex. 4 (Evelyn T. 174–75). Similarly, Vickie, who testified to knowing Sims for about twenty years, was able to identify him by his voice alone. *Id.*, Ex. 4 (Vickie T. 194). She also identified him because he was wearing the same outfit as earlier that day. *Id.*, Ex. 4 (Vickie T. 193, 196). Dorothy and McCoy, who were less familiar with Sims, testified that they identified Sims because he was wearing the same clothes as earlier in the evening. *Id.*, Ex. 3 (McCoy T. 139–41); Ex. 4 (Dorothy T. 157–59).

In light of their familiarity with Sims, several of the women initially believed that he was actually joking around. *See, e.g.*, Doc. [14], Ex. 4 (Evelyn T. 177); (Vickie T. 194). However, they

---

[1] Octavia departed from McCoy's house before the robbery occurred. Doc. [14], Ex. 3 (Stringer T. 127–28).

quickly realized he was serious and began to fear for their lives. *See*, *e.g.*, *id.*, Ex. 4 (Evelyn 177–78). Sims held the women in the kitchen at gunpoint. *Id.*, Ex. 4 (Dorothy T. 157–58); (Evelyn T. 176). The other man cornered McCoy in her bathroom and held her there at gunpoint. *Id.*, Ex. 3 (McCoy T. 138); Ex. 4 (Dorothy T. 163); (Evelyn T. 180). With guns in their faces, the women complied with the robbers' demands for their money. *See*, *e.g.*, *id.*, Ex. 4 (Evelyn T. 176); (Vickie T. 195). Evelyn "threw" her money, around $300, at Sims. *Id.*, Ex. 4 (Evelyn T. 176). Surprised and frightened, Vickie dropped roughly $250 on the floor that she had in her lap, which Sims picked up. *Id.*, Ex. 4 (Vickie T. 195). Dorothy handed over $300. *Id.*, Ex. 4 (Dorothy T. 159). Sims took more than $700 from McCoy's wallet, which was located in the living room. *Id.*, Ex. 3 (McCoy T. 143, 152). After gathering the money, the men fled the scene in a black Pontiac Grand Prix. *Id.*, Ex. 3 (Stringer T. 122).

Presenting an alternative version of events, Sims flatly denied robbing the women at McCoy's house. Doc. [14], Ex. 4 (Sims T. 230). Sims and his sister, Verlinda Sims ("Verlinda"), testified that they were together from around 9:30 PM to 10:30 PM. *Id.*, Ex. 4 (Verlinda T. 208–9); (Sims T. 234). At that time, Sims, dressed in a white shirt and blue jeans, left Verlinda's house and, alone, drove about 30 minutes to Hebron, MS. *Id.*, Ex. 4 (Verlinda T. 211); (Sims T. 234). After briefly stopping at one bar there, Norman's, Sims arrived at Dunk's around 11:30 PM and left the club before it closed. *Id.*, Ex. 4 (Sims T. 234, 240). According to Verlinda, Sims then met her at a local Laurel mall around 12:30 AM and he was eventually arrested near Simmons' house later that night. *Id.*, Ex. 4 (Verlinda T. 209). Sims' nephew, Phillip Sims ("Phillip"), testified that he arrived at Dunk's around 12:00 AM, Sims showed up around 12:25 AM, and they were together at the club until it closed at 2:00 AM. *Id.*, Ex. 4 (Phillip T. 217–19). Phillip further testified that several other people were with Sims and himself at Dunk's, including Phillip's wife, Francesca Sims

3

("Francesca"), his sister and her boyfriend, a cousin, and "many other people." *Id.*, Ex. 4 (Phillip T. 218). None of these other individuals testified on Sims' behalf.

### III.   PROCEDURAL HISTORY

On October 21, 2014, Sims was indicted on one count of armed robbery, Miss. Code Ann. § 97–3–79, with McCoy, Evelyn, Dorothy, and Vickie identified as the victims, Doc. [14], Ex. 1, at 9–10. The State later reindicted him on four separate counts of armed robbery against each woman individually. *Id.*, Ex. 1, at 69–70.[2] On June 23, 2015, Sims was brought to trial. *Id.*, Ex. 1, at 147. After a daylong trial, he was convicted on all counts and sentenced to four twenty-eight year terms of imprisonment to run concurrently. *Id.*, Ex. 5, at 48–49. The Mississippi Court of Appeals affirmed Sims' conviction and denied his *pro se* motion for a rehearing. *Id.*, Ex. 7, at 17–39. *See also Sims v. State*, 213 So.3d 90 (Miss. Ct. App. 2016). Thereafter, Sims petitioned the Mississippi Supreme Court for a writ of *certiorari*, which was denied by that Court on April 20, 2017. *Id.*, Ex. 7, at 2–15. *See also Sims v. State*, 214 So.3d 1058 (Miss. 2017). Finally, Sims pursued postconviction relief. *Id.*, Ex. 8, at 4–40. On October 17, 2017, he filed an application before the Mississippi Supreme Court seeking leave to proceed with his postconviction motion in state trial court ("PCR application"). *Ibid.* On January 10, 2018, the Court summarily denied his application. *Id.*, Ex. 8, at 2–3. On May 31, 2018, Sims filed the present federal habeas petition. Doc. [1].

### IV.   STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court is required to apply the standard of review set forth in Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), to all claims "adjudicated on the merits" in state court. *See* 28 U.S.C. § 2254(d). If the adjudicated state court claim is a pure question of law or a

---

[2] While Sims was indicted with a codefendant, their trials were later severed. Doc. [14], Ex. 3 (T. 102–3).

mixed question of law and fact, the Court defers to the state court decision unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(2).

Section 2254(d)(1)'s "'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Poree v. Collins*, 866 F.3d 235, 246 (5th Cir. 2017) (quotation omitted). "[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme] Court's cases can supply such law." *Id.* (quotation omitted). The "'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citation omitted). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Richardson v. Quarterman*, 537 F.3d 466, 472–73 (5th Cir. 2008) (quotation omitted). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] petitioner's case." *Id.* at 473 (quotation omitted). When determining whether a decision is objectively unreasonable, the Court considers whether the decision is "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014) (quotation omitted).

Under Section 2254(d)(2), a state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir. 2013) (quotation omitted). Instead, the presumed correctness of the state court's factual findings can only be rebutted by clear and convincing evidence. *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (quotation omitted).

## V.     ANALYSIS

### A. Exhaustion of State Remedies

#### i. Law

Before seeking federal habeas relief, a petitioner must present his claims in state court. 28 U.S.C. § 2254(b)(1), (c). In doing so, the petitioner must invoke "one complete round" of the State's "established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). That is, the petitioner must have "fairly presented" his federal habeas claims at "*each* appropriate state court [level,] including a state supreme court with powers of discretionary review[.]" *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (emphasis added) (citations omitted). *See also King v. Pfister*, 834 F.3d 808, 815 (7th Cir. 2016); *Carrillo–Carrillo v. Coursey*, 823 F.3d 1217, 1220–21 (9th Cir. 2016). The petitioner's "full round" of state review may take one of two forms: direct, *O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728, or collateral, *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005), appeal.

The "Mississippi Rules of Appellate Procedure" governs Mississippi's "normal, simple, and established" appellate process on direct appeal. *See*, *e.g.*, *Watts v. Williams*, No. 3:20–CV–139–NBB–JMV, 2021 WL 1582775, at *2 (N.D. Miss. Apr. 22, 2021). Under the normal direct appeal process, a criminal defendant has thirty days to file an appeal after, *inter alia*, the entry of final judgment of his conviction at the trial level. *See* M.R.A.P. 4(a), (e). If the defendant is unhappy with the Mississippi Court of Appeals' decision, he must move that court for a rehearing before appealing further. M.R.A.P. 17(b). New claims cannot be raised in a motion for rehearing. *See*, *e.g.*, *Parks v. Parks*, 914 So.2d 337, 341 (Miss. Ct. App. 2005). If the motion is denied, the defendant has fourteen days to petition the Mississippi Supreme Court for a writ of *certiorari*. M.R.A.P. 17. The Mississippi Supreme Court only addresses claims raised before the Mississippi Court of Appeals. *See*, *e.g.*, *Anderson v. LaVere*, 136 So.3d 404, 411 (Miss. 2014) (citations omitted).

Alternatively, a defendant may collaterally attack his conviction via a PCR application. *See*, *e.g.*, *Morris*, 413 F.3d at 491. If a defendant, such as Sims, has previously filed a direct appeal with the Mississippi Supreme Court, he must seek leave with that Court before pursuing postconviction relief in state trial court. *See* Miss. Code Ann. § 99–39–7. If the Mississippi Supreme Court denies the petitioner's PCR application, then he has exhausted those claims for federal habeas purposes. *Jordan v. Epps*, 756 F.3d 395, 404–5 (5th Cir. 2014).[3] With these principles in mind, the Court turns to the facts of this case.

### ii. Application

In his federal habeas petition, Sims raises seven claims, which include the following: (i) his indictment was constitutionally defective because it did not list any "essential elements that were

---

[3] *See also Anderson v. Hall*, No. 3:18–CV–26–CWR–RPM, 2021 WL 789892, at *7 n.11 (S.D. Miss. Jan. 27, 2021), *adopted*, No. 3:18–CV–26–CWR–RPM, 2021 WL 785098 (S.D. Miss. Mar. 1, 2021).

taken," such as "items or currency," Doc. [1], at 5; (ii) his due process rights were violated because the trial court excluded his clothes worn at arrest as evidence at trial, *id.*, at 7; (iii) his trial attorneys were constitutionally ineffective because they failed to call several witnesses, *id.*, at 8;[4] (iv) "ineffective assistance of counsel/improper juror," *id.*, at 10;[5] (v) his "right to a speedy trial" was violated insofar his bail was not lowered in light of his indigency, *id.*, at 11; (vi) his right against self-incrimination was violated because the prosecutor was allowed to cross-examine him about his prior felony convictions, *ibid.*; and (vii) his Confrontation Clause right was violated because the State did not call Chance Ellis to testify, *ibid.*

Here, Sims simply did not raise his second, fourth, sixth, and seventh federal habeas claims on direct or collateral appeal. Doc. [1]; Doc. [14], Ex. 7, at 3–15; Ex. 8, at 4–39. Since Sims did not raise these claims in state court, he failed to exhaust them. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728. Next, Sims did raise his fifth federal habeas claim, i.e. his "speedy trial" claim, in a pretrial motion and in his *pro se* motion for rehearing. Doc. [1], Ex. 1, at 5–12; [14], Ex. 7, at 40–53. Importantly, however, he did not raise this claim in his *certiorari* petition or PCR application so he plainly failed to undertake "one *full* round" of state appellate review. *Boerckel*, 526 U.S. at 845, 119 S.Ct. 1728 (emphasis added). *See also Morris*, 413 F.3d at 491. With regard to his first federal habeas claim, i.e. his defective indictment claim, Sims did raise the claim once before his present petition—in his *certiorari* petition on direct appeal. Doc. [14], Ex. 5, at 2–25.[6] However, Sims failed to present this claim before the Mississippi Court of Appeals.

---

[4] The Court liberally construed this claim as an ineffective assistance of counsel claim. *Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).
[5] Under this broad title, Sims sets forth seemingly random events that occurred during the trial, including as follows: (i) the court was in session for trial between 9:00 AM and 6:00 PM; (ii) the bailiff passed a note to the judge that the prosecutor viewed; (iii) the prosecutor stated "so long as they put guilty or not guilty" several times during the trial; and (iv) Sims knew one of the jurors (though he fails to name that juror). Doc. [1], at 10.
[6] In full, Sims raised the following claims in his *certiorari* petition: (i) his Confrontation Clause rights were violated by the trial court's failure to allow certain witnesses to testify; (ii) certain hearsay statements were inappropriately admitted at trial; (iii) his indictment was constitutionally insufficient to put him on notice about the charges against

In particular, his appointed appellate counsel did not raise this claim before the Mississippi Court of Appeals,[7] and, putting aside the procedural bar on raising new claims in a motion for rehearing, Sims himself did not raise the claim in his *pro se* motion.[8] Doc. [14], Ex. 5, at 2–25; Ex. 7, at 3–15. Nevertheless, Sims was required to raise this claim at "each and every level," *King*, 834 F.3d at 815, of Mississippi's "normal, simple, and established" appellate procedure, *Boerckel*, 526 U.S. at 845, 119 S.Ct. 1728, which includes the Mississippi Court of Appeals, M.R.A.P. 4(a). In short, Sims did not undertake "one *complete* round" of the State's "established [*direct*] appellate review process" before raising this claim here because he failed to raise it before the Mississippi Court of Appeals or in his PCR application. *Boerckel*, 526 U.S. at 845, 119 S.Ct. 1728 (emphasis added). Even if the Court assumed *arguendo* that Sims exhausted this claim, it also would fail on the merits for the reasons further below.

Sims did, however, exhaust his third federal habeas claim in his PCR application.[9] In that application, Sims raised fifteen ineffective assistance of counsel claims. Doc. [14], Ex. 8, at 20–22. In one of those claims, Sims argued that his trial attorneys provided ineffective assistance because they failed to call witnesses at trial. *Ibid.* Sims' present uncalled witness ineffective assistance of counsel claim, with subparts, is, therefore, properly before this Court. *Jordan*, 756 F.3d at 404–5.

---

him; (iv) certain identification testimony at trial violated his constitutional rights; and (v) his attorney provided ineffective assistance of counsel by failing to seek an alibi instruction. Doc. [14], Ex. 7, at 3–15.

[7] Through counsel, Sims raised three claims in front of the Mississippi Court of Appeals on direct appeal: (i) his trial counsel provided ineffective assistance because he (a) failed to object to prejudicial hearsay and (b) failed to request an alibi instruction as well as that (ii) his conviction was against the weight of the evidence. Doc. [14], Ex. 5, at 2–25.

[8] In his motion for rehearing, Sims claimed that: (i) he had a "conflict of interest" with one of his attorneys because they disagreed about his case; (ii) he received ineffective assistance of trial counsel; (iii) his conviction was against the weight of the evidence; (iv) the State obtained his conviction with perjured testimony; and (v) his speedy trial right was violated by the state trial court's failure to reduce his bond. Doc. [14], Ex. 7, at 40–53.

[9] In his PCR application, Sims raised two other claims: (i) the trial court erred by refusing to give the jury a proper circumstantial evidence instruction, and (ii) the trial court erred by failing to give the jury a "two-theory" instruction. Doc. [14], Ex. 8, at 4–39.

### B. Mixed Petition

In light of the above, Sims' petition contains both exhausted and unexhausted claims and, therefore, is "mixed." *See*, *e.g.*, *Rose v. Lundy*, 455 U.S. 509, 516–17, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). As such, one of three courses of action would typically be appropriate: (i) dismissal of the entire mixed petition without prejudice; (ii) grant Sims leave to delete his unexhausted claims from his petition; or, in some circumstances, (iii) hold Sims' habeas petition in abeyance while he exhausts the claims identified above in Mississippi state court. *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). Nevertheless, this Court is under no obligation to engage in "judicial ping-pong" when "it is obvious that the unexhausted claim would be procedurally barred in state court[.]" *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (quoting *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993)). Instead, "[i]f a prisoner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

Here, the Mississippi state courts would conclude that any future PCR application filed by Sims would be procedurally barred for two different reasons. First, Mississippi law prohibits a petitioner from filing a "second or successive petition." Miss. Code Ann. § 99–39–27(9). A state procedural bar on a second or successive petition is an independent state law ground for dismissing a habeas petition. *Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir. 1998). The procedural bar also appears to be "strictly and regularly enforced," and, therefore, "adequate" as well. *See, e.g.*, *Rivera-Guadiana v. King*, No. 1:12–CV–395–HSO–RHW, 2014 WL 6951067, at *4 (S.D. Miss. Dec. 8, 2014) (collecting cases to demonstrate that Miss. Code Ann. § 99–39–27(9) is strictly and regularly enforced). Sims has not presented any evidence to suggest otherwise. *Stokes v. Anderson*,

123 F.3d 858, 860 (5th Cir. 1997) ("The petitioner bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his direct appeal."). Here, Sims already pursued postconviction relief in state court on a previous occasion. Doc. [14], Ex. 8, at 4–40. In turn, if Sims returned to state court seeking to exhaust his claims, the Mississippi state courts would conclude that his petition was procedurally barred as a "second or successive petition." Miss. Code Ann. § 99–39–27(9).

In the alternative, a PCR application must be filed within three years of entry of the defendant's judgment of conviction on direct appeal in state court. Miss. Code Ann. § 99–39–5(2). *See also Beal v. State*, 270 So.3d 910 (Miss. Ct. App. 2018). Mississippi's filing deadline is an independent state ground for denying a PCR application. *See*, *e.g.*, *Moore v. Roberts*, 83 F.3d 699, 703–4 (5th Cir. 1996). The statute appears to be "strictly and regularly enforced," and, therefore, "adequate," too. *See*, *e.g.*, *Jenkins v. State*, 159 So.3d 608, 610 (Miss. Ct. App. 2015); *Creel v. King*, 161 So.3d 1098, 1099 (Miss. Ct. App. 2014). Sims has not put forth any evidence to suggest otherwise. *Stokes*, 123 F.3d at 860. Here, Sims' direct appeal became final on April 20, 2017. Doc. [14], Ex. 7, at 2. In turn, Sims had three years from that date, i.e. on or before April 20, 2020, to file a state PCR application including his currently unexhausted federal habeas claims. Miss. Code Ann. § 99–39–5(2). Nevertheless, April 20, 2020 has come and gone. It is now 2021. Thus, the Mississippi state courts would also conclude that he is procedurally barred from raising those claims because he did not seek postconviction relief in a timely manner. Miss. Code Ann. § 99–39–5(2).

In light of the above, Sims' procedural default precludes federal habeas review "unless he can show cause for the default and actual prejudice, or that it will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Cause must "be something *external* to the petitioner, something that cannot fairly be attributed to

11

him." *Id.* at 753 (emphasis in original). Sims has not presented any evidence showing cause for his failure to exhaust his federal habeas claims in state court. Absent a showing of cause, the Court need not address the prejudice element since both cause and prejudice must both be shown to avoid the procedural bar. *See*, *e.g.*, *Bagwell v. Dretke*, 372 F.3d 748, 756 (5th Cir. 2004).

Finally, the Court turns to the "fundamental miscarriage of justice," or, "actual innocence," exception. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. "Actual innocence" refers to factual, not legal, innocence. *Finley*, 243 F.3d at 220. An actual innocence claim is only established when the petitioner shows that, in light of newly-discovered evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Newly-discovered evidence must be reliable—"whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324, 115 S.Ct. 851. This newly-discovered evidence need not, however, necessarily be admissible at trial. *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). Here, Sims has failed to present any evidence, let alone *newly discovered* evidence, that would entitle him to application of the actual innocence exception.

For these reasons, Sims' unexhausted claims should be deemed procedurally defaulted and, therefore, dismissed. *Finley*, 243 F.3d at 220.

### C. Constitutionally Defective Indictment

Out of an abundance of caution, the Court addresses the merits of Sims' defective indictment claim in the alternative.[10] Under the Due Process Clause, a defendant is entitled to "notice of the

---

[10] Since Sims' defective indictment claim is unexhausted, the Court's review is *de novo*. *See*, *e.g.*, *Peek v. Tanner*, No. CV 18–604, 2019 WL 2423230, at *2 (E.D. La. June 10, 2019).

specific charge[s]" against him. *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948). "The essential elements of the offense . . . must be included in the indictment but need not be expressed in any specific terms." *United States v. Arteaga-Limones*, 529 F.2d 1183, 1193 (5th Cir. 1994) (citations omitted). The Court's standard for reviewing the constitutional sufficiency of an indictment is "practical, not technical[.]"*McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994). Ultimately, an indictment is considered constitutionally sufficient when it "'[1] contains the elements of the offense charged[,] [2] fairly informs a defendant of the charge against him[,] and [3] enables him to plead acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Chaney*, 964 F.2d 437, 446 (5th Cir. 1992) (quotation omitted).

Here, Sims was indicted and reindicted on charges of armed robbery. Miss. Code Ann. § 97–3–79. Under statute, armed robbery has four elements: "(1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, . . . (3) by that means taking and carrying away the property of another from his person or in his presence . . .[; and (4)] exhibition of a deadly weapon." *Veazy v. State*, 113 So.3d 1226, 1230 (Miss. 2013) (citations omitted). Both of Sims' indictments specified that he was charged with "willfully, unlawfully, and feloniously" using a handgun to rob four specific women, Dorothy, McCoy, Evelyn, and Vickie, of their "personal property" on or about a specific date, March 16, 2014, and put them "in fear of immediate injury." Doc. [14], Ex. 1, at 9–10, 69–70. The indictments state the who, what, where, and why of the offense and identify every element of armed robbery. *Ibid.* Finally, contrary to Sims' argument, money falls comfortably within the broad term "personal property." *See, e.g.*, *McKay*, 12 F.3d at 69 (finding that indictment's exclusion of element terms "intentionally or knowingly" did not render indictment defective because those terms were subsumed in the term "threaten"). Ultimately, Sims' indictment was constitutionally sufficient. *Chaney*, 964 F.2d at 446. This claim fails.

### D. Ineffective Assistance of Counsel

### i. Law

"The Sixth Amendment's guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence' entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence." *Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014). It is well-established that to prevail on a claim of *constitutionally* ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To establish deficient performance, "a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quotation omitted). "'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Hinton*, 571 U.S. at 273, 134 S.Ct. 1081 (quotation omitted). With respect to prejudice, "a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Richter*, 562 U.S. at 104, 131 S.Ct. 770 (quotation omitted). It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052.

Nevertheless, the Court does not simply consider Sims' multi-part Strickland claim *de novo* because that claim was addressed on the merits in state court.[11] Doc. [14], Ex. 8, at 2. While Sims failed to identify whether his ineffective assistance of counsel claim passes through Section 2254(d)(1) or (2), an ineffective assistance of counsel claim is a mixed question of law and fact so Section 2254(d)(1) applies. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). As such, Sims is only entitled to relief if he demonstrates that the state court's conclusion was "contrary to" or an "unreasonable application" of Supreme Court precedent. *Ibid.* Since both the *Strickland* standard and Section 2254(d)(1) are "highly deferential . . .[,] when the two apply in tandem, review is 'doubly' so[.]" *Richter*, 562 U.S. at 105, 131 S.Ct. 770 (citations omitted).

### ii. Application

In his petition, Sims argues that his attorneys provided ineffective assistance because they did not call "the investigator," Simmons, Francesca, and "numerous of their friends" as witnesses. Doc. [1], at 8. However, ineffective assistance of counsel claims grounded in uncalled witnesses are "disfavored[,]" *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010); *Carr v. State*, 873 So.2d 991, 1004 (Miss. 2004), because the decision of whether to call a particular witness to testify "is considered to be essentially strategic, and 'speculations as to what [uncalled] witnesses would have testified is too uncertain.'" *Gregory*, 601 F.3d at 352–53 (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). Therefore, to succeed on an ineffective assistance of counsel claim based

---

[11] The Mississippi Supreme Court summarily denied Sims' petition on the grounds that, *inter alia*, his *Strickland* claim "lack[ed] sufficient merit." Doc. [14], Ex. 8, at 2. A summary denial of a claim on the merits is considered "adjudicated on the merits" for purposes of Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 187, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011). However, there is no reasoned opinion discussing Sims' remaining claim. Cf. *Sims v. State*, 213 So.3d 90, 99–102 (Miss. Ct. App. 2016) (discussing ineffective assistance of counsel claim premised on trial counsel's failure to request alibi instruction). When, as here, there is no reasoned state-court decision on the merits, the federal court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Richter*, 562 U.S. at 102, 131 S.Ct. 770. If such disagreement is possible, then the petitioner's claim must be denied. *Ibid.*

upon uncalled witnesses, "an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Id.* (citing *Alexander*, 775 F.2d at 602). In meeting this burden, the petitioner must furnish the Court with evidence, such as affidavits. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). *See also Wilson v. Warden, Riverbend Det. Ctr.*, No. 11–CV–0355, 2014 WL 1315557, at *6 (W.D. La. Mar. 31, 2014).

Here, Sims has fallen well short of meeting his burden of demonstrating that he suffered prejudice from his trial counsels' failure to call "the investigator," Simmons, Francesca and "numerous of their friends" at trial. Doc. [1], at 8. First, Sims simply fails to identify the "investigator" or "numerous . . . friends" in his habeas petition. *Ibid.* Nevertheless, even assuming *arguendo* that Sims was referring to the investigator that allegedly saw the club stamp on his hand, Doc. [14], Ex. 4 (Sims T. 236–37), and the "numerous . . . friends" are those individuals identified by Phillip as also being at Dunk's, *id.*, Ex. 4 (Phillip T. 218), Sims has still failed to demonstrate that *any* of the uncalled witnesses (i) were willing to testify; (ii) what the content of their testimony would be; and (iii) whether this testimony would be favorable to his case. *Gregory*, 601 F.3d at 352–53. In light of the above, the Mississippi Supreme Court could have reasonably concluded that Sims' uncalled witness ineffective assistance of counsel claim was completely speculative and declined to find prejudice on this basis. Doc. [14], Ex. 8, at 2. The Court does not reach the performance prong. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that petitioner Victor L. Sims' *habeas corpus* petition be dismissed with prejudice.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 5th day of August 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE